**UNITED STATES of America, Plaintiff,**

v.

**Noe COLIMA–MONGE, Defendant.**

**Cr No. 96–305–FR.**

United States District Court,
D. Oregon.

Dec. 8, 1997.

Kathleen L. Bickers, Special Assistant United States Attorney, Portland, OR, for Plaintiff.

Nancy Bergeson, Arron Guevara, Assistant Federal Public Defenders, Portland, OR, for Defendant.

## OPINION AND ORDER

FRYE, District Judge.

Before the court is the motion of the defendant, Noe Colima–Monge, to dismiss based on deportation of material witness (# 16).

### FACTS

On July 3, 1996, the defendant, Noe Colima–Monge, and his co-defendant, Misael Monge Delgado, were arrested after officers assigned to the Regional Organized Crime and Narcotics Agency (ROCN) stopped the car in which the men were riding and found heroin in the trunk. On July 4, 1996, the state court set bail for Delgado in the amount of $750,000. On July 5, 1996, Delgado made an initial appearance in state court. Bail was reduced to $100,000. On July 9, 1996, Colima–Monge and Delgado were indicted on drug charges by a state grand jury.

Attorney Kathleen Bickers is assigned to ROCN and is designated as a prosecutor for the State of Oregon and as a Special Assistant United States Attorney. She is assigned to the state and federal cases involving defendants Colima–Monge and Delgado.

Lee Peterson is a Special Agent for the Immigration and Naturalization Service (INS). He interviewed Delgado at the Multnomah County Jail on July 9, 1996 and determined that Delgado was an illegal alien.

On July 11, 1996, Delgado's bail was reduced to $70,000, the standard bail for the charges filed against him. In the courts of the State of Oregon, a defendant is released upon posting in cash ten percent of the amount of the bail.

On July 12, 1996, a state court ordered Delgado to appear at a certification hearing to be held on August 9, 1996.

Special Agent Peterson is aware that, in general, once the INS is informed by a Multnomah County teletype that a defendant is only being held in custody because of an INS detainer, the INS deports the defendant soon thereafter. This is done because, at that point, the INS is required to pay Multnomah County for the keep of the defendant. Special Agent Peterson has seen other defendants deported when they had pending charges but had posted bail and were only being held because of the INS detainer. Delgado's INS "A file" does not contain a Multnomah County teletype saying that he is only being held because of the INS detainer. There is no indication in the file that Multnomah County released Delgado to the INS for deportation. Special Agent Peterson testified that Delgado was deported because he admitted during his interview that he entered the country illegally.

Special Agent Peterson does not know the date upon which Delgado posted bail on the state charges. Whatever that date was, Delgado was then to be detained and turned over to the INS. Special Agent Peterson testified that the INS generally serves a warrant authorizing deportation proceedings within seventy-two hours of notification by the county that the person has posted bail. The record contains a release order and agreement for Delgado's $70,000 bail, which is dated July 12, 1996.

On July 15, 1996, Special Agent Peterson mailed to Delgado an order to show cause why he should not be deported. Special Agent Peterson personally served the warrant on Delgado at the Multnomah County Jail on July 18, 1996.

On an unknown date after July 18, 1996, the INS transported Delgado to Florence, Arizona. A deportation hearing was conducted by the INS on August 13, 1996. Delgado was deported on that date.

On August 14, 1996, the state court issued a bench warrant for the arrest of Delgado because he had failed to appear at the certification hearing on August 9, 1996.

On August 14, 1996, a federal grand jury in the State of Oregon indicted Colima–Monge and Delgado for the crime of knowingly and intentionally possessing with the intent to distribute a quantity of heroin in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting an offense in violation of 18 U.S.C. § 2.

Special Assistant United States Attorney Bickers entered into plea negotiations with Delgado's attorney, Paul Ferder. Bickers knew that Delgado was an illegal alien within ten hours of his arrest. Ferder eventually told Bickers that Delgado would plead guilty. Ferder never told Bickers that Delgado was trying to make bail. Bickers was not aware that Delgado did not appear at the certification hearing on August 9, 1996. The prosecutor's file is not taken to the certification hearing to note any nonappearance. Instead, a defendant's failure to appear at the certification hearing is noted on a master docket for the district attorney's office. Bickers first learned from Ferder in early August that Delgado was not in custody. Bickers told William Gray, the ROCN case agent, that Delgado had been deported. Bickers also spoke at that time with Larry Vallodalid, an INS agent now assigned to ROCN. Vallodalid knew nothing of the deportation and was not involved in the case until Bickers asked him to review the file in December of 1996.

## CONTENTIONS OF THE PARTIES

Colima–Monge moves to dismiss the indictment because the government deported a witness, Delgado, without first allowing Colima–Monge to interview him. Colima–Monge contends that Delgado would have been a material and favorable witness in his defense because Delgado originally told the police that the drugs did not belong to Colima–Monge, and then later changed his story.

The government contends that dismissal is not warranted because the government did not act in bad faith in deporting Delgado and because Delgado's statements to the police

incriminated Colima–Monge by corroborating Colima–Monge's admissions.

## LEGAL STANDARDS

 A court may sanction the government for deporting a witness only if the criminal defendant makes a plausible showing that the testimony of the deported witness would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982). Sanctions are warranted only if there is a reasonable likelihood that the testimony of the deported witness could have affected the judgment of the trier of fact. *Id.* Furthermore, "the defendant must make an initial showing that the government acted in bad faith *and* that this conduct resulted in prejudice to the defendant's case." *United States v. Armenta,* 69 F.3d 304, 307 (9th Cir.1995) (emphasis in the original) (internal quotation omitted). The negligent failure to ensure the presence of a witness is insufficient for a finding of bad faith. *Id.* at 307 n. 1.

## RULING OF THE COURT

Bickers had no knowledge of the deportation proceedings against Delgado. On August 9, 1996, she did not know that Delgado did not appear at the certification hearing on that day, four days before Delgado was deported. In *Armenta,* the prosecutor was asked by letter to state any objections to transferring a material witness to Mexico, but he did not respond. The court held that his conduct *may* have been negligent, but negligence is insufficient to prove bad faith. *Armenta,* 69 F.3d at 307. Here, Bicker's conduct is much less culpable than that of the prosecutor in *Armenta.* There is no evidence that Bickers received notification of Delgado's failure to appear in time to prevent the deportation.

Colima–Monge has made no showing that "the Government departed from normal deportation procedures" or that "the Government deported [Delgado] to gain an unfair tactical advantage over him at trial." *United States v. Dring,* 930 F.2d 687, 695 (9th Cir. 1991), *cert. denied,* 506 U.S. 836, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992).

Colima–Monge has failed to make the initial showing that the government acted in bad faith. Although Delgado's testimony would have been material to Colima–Monge's defense in that Delgado could have testified regarding Colima–Monge's knowledge of the drug transaction, Delgado's statements concerning the ownership of the drugs and how they were obtained changed over time. The court declines to address whether Delgado's testimony would have been favorable to Colima–Monge.

## CONCLUSION

The defendant's motion to dismiss based on deportation of a material witness (# 16) is DENIED.

IT IS SO ORDERED.